**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| RICKEY ALLEN JORDAN | CIVIL ACTION NO. 11-0723 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| STEVE PRATOR, ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment (Record Document 31) filed by Defendants, Sheriff Steve Prator ("Sheriff Prator"), Corporal Martha S. Garrison ("Cpl. Garrison"), and Deputy Michael D. Pye ("Deputy Pye"). Defendants move for the dismissal with prejudice of all claims asserted by Plaintiff Rickey Allen Jordan ("Jordan"). Jordan opposes the motion. See Record Document 33. For the reasons that follow, the Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART.** All claims against Sheriff Steve Prator are **DISMISSED WITH PREJUDICE.** However, the Motion for Summary Judgment is **DENIED** with respect to all claims against Cpl. Garrison and Deputy Pye.

**BACKGROUND**

Due to the parties' differing factual accounts on key points, the facts will be generally discussed based on a review of the audio/video evidence of the incident at issue in connection with the various statements provided by the deputies. See Caddo Parish Sheriff's Office Audio/Videotape Recording submitted via manual attachment, Record Document 31-3, ("Audio/Video Recording"). As will be explained, however, the Audio/Video Recording does not clarify the evidence sufficiently to find that Cpl. Garrison and Deputy Pye are entitled to qualified immunity at this time.

On May 16, 2010, Cpl. Garrison and Deputy Pye were approached by a pedestrian who identified himself as Richard Allen Woods ("Woods").  Woods sought Cpl. Garrison's and Deputy Pye's help in retrieving items located on Jordan's property.  <u>See</u> Record Document 31-2 at ¶ 3, Defendants' Statement of Undisputed Facts.  Cpl. Garrison and Deputy Pye accompanied Woods to Jordan's property to resolve the situation.  The dispute that followed can be seen and heard via cameras located in the police car.[1]

Woods previously performed work for Jordan and during that time temporarily lived in a camper trailer located on Jordan's property.  It appears from the recorded conversation between Jordan, Woods, and the two deputies that at some point prior to the dispute, Woods left behind various items and failed to notify Jordan of his departure or expected return.  <u>See</u> Audio/Video Recording.

After Jordan spoke with the two deputies, he agreed to allow Woods to remove certain items located under the house.  However, there remained a dispute over a computer located inside Jordan's house and other items that may have been located inside a camper trailer which had been moved to a different property owned by Jordan.  Woods subsequently left to borrow a truck in order to haul away the property.  When Woods returned, Woods advised the deputies that a witness told him that they had previously observed a toolbox in the back of Jordan's truck as Jordan drove away from his property.

---

[1]The remaining factual background is derived from the Audio/Video Recording of the incident.  The statements made in the briefs by Cpl. Garrison and Deputy Pye at times appear to be inconsistent and/or in conflict with the recording.  Accordingly, as instructed in <u>Brown v. Lynch</u>, 2013 WL 1611464 (5th Cir. 2013), we construe all facts and inferences in the light most favorable to the nonmoving party, but when [a party's] version of the facts conflicts with the audio and video evidence, we consider the facts "in the light depicted by the videotape."

Cpl. Garrison asked Woods if this "witness" was willing to testify in Court.  Upon Woods'

answer in the affirmative, Cpl. Garrison instructed Deputy Pye to accompany her to

confront Jordan.  The two deputies then reinitiated contact with Jordan, read him his

<u>Miranda</u> rights, and arrested him upon his failure to immediately take them to the other

property on which the camper trailer was located.  Upon being placed in handcuffs in the

back of Deputy Pye's patrol car, Cpl. Garrison appears to have accompanied Woods as

Woods removed items from the house.[2]  The Audio/Video Recording subsequently shows

the two deputies obtaining a statement from the witness after the arrest was complete.

Jordan was later acquitted of the theft charge.

On May 02, 2011, Jordan filed this lawsuit in state district court naming Steve Prator,

Cpl. Garrison, and Deputy Pye as defendants.  <u>See</u> Record Document 1, ¶ 5.  The matter

was subsequently removed pursuant to Title 28, United States Code, Section 1331, federal

question jurisdiction.  Jordan asserts that he was arrested without probable cause and

subject to unreasonable search and seizure in violation of the Fourth and Fourteenth

Amendments to the United States Constitution and Article 1, Sections 2 and 5 of the

Louisiana Constitution.

## LAW AND ANALYSIS

**I.      Summary Judgment Standard.**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil

---

[2]Various statements by Cpl. Garrison seem inconsistent on this point.  The evidence is also conflicting as to how far inside the house Deputy Garrison ventured.  However, when viewing in the light most favorable to the nonmoving party, Jordan has presented evidence showing that, in at least one statement, Cpl. Garrison admits to entering the house and permitting Woods to remove one or possibly more items.

Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010).  "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.2004).  If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir.2004).  Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted.  See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir.2005).

Recently, the Fifth Circuit discussed the summary judgment standard applicable in cases wherein video recordings taken at the scene make "facts evident." Carnaby v. City of Houston, 636 F.3d 183, 187 (5th Cir. 2011).  Specifically, the Fifth Circuit reasoned:

> Although we review evidence in the light most favorable to the nonmoving party, we assign greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene. [The court] need not rely on the plaintiff's description of the facts where the record discredits that description but should instead consider the facts in the light depicted by the videotape.

Id. (internal citations and quotations omitted).

---

[3]The Court notes that the amended Rule 56 requires that there be "no genuine *dispute* as to any material fact," but this change does not alter the Court's analysis. F.R.C.P. 56(a) and advisory committee's note (emphasis added).

## II.    Qualified Immunity.

"Qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 815 (2009).  Accordingly, this Court must conduct a bifurcated analysis to assess whether Cpl. Garrison and Deputy Pye are entitled to qualified immunity.  See Evett v. DETNTFF, 330 F.3d 681, 687 (5th Cir. 2003)(citing Harper v. Harris County, Tex., 21 F.3d 597, 600 (5th Cir. 1994)).  "First, the plaintiff must allege the violation of a clearly established right."  Id. at 687.  Part of the required analysis in this first step is to determine whether the "record shows that the violation occurred, or at least gives rise to a genuine issue of material fact as to whether the defendant actually engaged in the conduct that violated the clearly-established right."  Kipps v. Caillier, 197 F.3d at 768 (citing Morris, 181 F.3d 657, 666 (5th Cir. 1999)).  Second, if it is determined that the official's conduct was unconstitutional, the court must then decide whether the conduct was nonetheless "objectively reasonable under the circumstances, such that a reasonably competent officer would not have known his actions violated then-existing clearly established law."  Evett, 330 F.3d at 687; see also Kipps, 197 F.3d at 768.  "The question of whether an official's conduct was objectively reasonable is a question of law to be decided by the Court."  Id.

## III.   Unlawful Arrest Claims.

In order to prevail on a constitutional claim of unlawful arrest, Jordan must show that he was arrested without probable cause.  See generally Brown v. Lyford, 243 F.3d 185, 189 (5th Cir. 2001).  "Probable cause to justify an arrest means facts and circumstances within

the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Michigan v. DeFillippo, 443 U.S. 31, 37, 99 S.Ct. 2627, 2632 (1979).  Probable cause is ascertained on the basis of facts available to the officer at the time of the arrest.  See Evett v. DETNTFF, 330 F.3d 681, 688 (5th Cir. 2003).

Here, there remains a genuine dispute as to whether the facts and circumstances within Cpl. Garrison and Deputy Pye's knowledge were sufficient to warrant the belief that Jordan had committed an offense.   A factfinder may reasonably conclude based on the totality of the facts and circumstances as depicted in the Audio/Video Recording that the deputies' knowledge at the moment of arrest was insufficient to establish probable cause to arrest Jordan.  It should be noted, however, that the Court expresses no opinion whether Cpl. Garrison and Deputy Pye will ultimately be entitled to qualified immunity after resolution of the disputed facts in this case; the Court merely notes that it is precluded from granting summary judgment in Defendants' favor at this stage.

The second part of this Court's analysis involves the determination of whether Cpl. Garrison's and Deputy Pye's actions were objectively reasonable under the circumstances such that a reasonably competent officer would not have known his actions violated then-existing clearly established law.[4]  As stated above, "[t]he question of whether an official's conduct was objectively reasonable is a question of law to be decided by the Court." Evett,

---

[4]This assumes that the factfinder concludes that all of Jordan's allegations are indeed true.  If the factfinder were to find that Cpl. Garrison and Deputy Pye did have probable cause to arrest to Jordan, this second step in the Court's analysis is unnecessary.

330 F.3d at 687.  However, the existence of material fact issues precludes the Court from making such determination at this time.   The Court cannot determine whether Cpl. Garrison's and Deputy Pye's actions were objectively reasonable under the circumstances until the factual disputes have been resolved and the Court has a clear understanding of incident.  Accordingly, at this stage, when viewing all facts in the light most favorable to the non-moving party, the Court cannot conclude that Cpl. Garrison and Deputy Pye are entitled to qualified immunity.

### IV.   Unlawful Search and Seizure and Deprivation of Property.

It is undisputed that Cpl. Garrison did not have a warrant authorizing entry into Jordan's home or the seizure of any items.  Defendants, however, argue that the deputies could not have conducted an unlawful search and/or seizure of Jordan's home as neither entered the dwelling.  On the other hand, Cpl. Garrison affirmatively represented that she asked Jordan for permission for Woods to retrieve a deer head inside the house.

Again, there remains a genuine dispute over these material facts.   When viewing the evidence in the light most favorable to Jordan, there remains a genuine dispute over whether Cpl. Garrison entered Jordan's home against his objections and/or whether she assisted Woods in the search and seizure of various items in violation of the Fourth Amendment.

Fact issues surrounding the allegations that Cpl. Garrison entered Jordan's house and effectuated the seizure of various items likewise prevent the Court from determining whether Cpl. Garrison's actions were objectively reasonable under the circumstances. Accordingly, the Court is also precluded from entering summary judgment on this issue at this time.

## V.   <u>Monell</u> Claim against Sheriff Steve Prator.

A sheriff's office is not a state agency under Louisiana state law.  <u>See</u> La. R.S. 13:5102.   Rather, it is a political subdivision.   <u>See id.</u>   Further, the Sheriff is an "autonomous local government official separate and apart from the parish he serves." <u>Victoria W.V. Larpenter</u>, 205 F.Supp.2d 580, 586 n. 16 (E.D.La.2002) (citing <u>Burge v. Parish of St. Tammany</u>, 187 F.3d 452, 469 (5th Cir.1999)).  Therefore, a suit against a sheriff is not a suit against the state, but rather a suit against a political subdivision, the sheriff's office.

In <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 98 S.Ct. 2018 (1978), the Supreme Court held that a municipality may not be liable solely under the doctrine of *respondeat superior*.   However, a municipality may be held liable if a policy, custom or practice is found as an independent basis for liability.   <u>Leatherman v. Tarrant County Narcotics Unit</u>, 507 U.S. 163, 113 S.Ct. 1160 (1993); <u>Monell</u>, *supra*.  Here, Jordan asserts a <u>Monell</u> claim against Sheriff Prator alleging that Cpl. Garrison's and Deputy Pye's actions were caused by the sheriff's unlawful "customs, policies and practices."   Record Document 33 at 9-10.   In his opposition to the Motion for Summary Judgment, however, Jordan gives little attention to this claim, simply stating in conclusory fashion:

> The video shows that Cpl. Garrison, a training officer supposedly knowledgeable of the protocols the Sheriff wants his deputies to follow, arresting Jordan without probable cause then searching his house and allowing the seizure of property without warrant or consent.... <u>If, as Armbruster states, these actions are consistent with the Sheriff's policies and protocols, those policies and protocols are unconstitutional.</u>

<u>Id.</u>

In a Section 1983 lawsuit against a municipality, a plaintiff must show that his

constitutional injury was the result of official policy, custom, or the act of an official policy maker.  See Monell v. Dep't of Soc. Servs. of City of NY, 436 U.S. 658, 98 S.Ct. 2018 (1978). The Monell court concluded "that a local government may not be sued under [Section] 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. at 694, 98 S.Ct. at 2037-2038.

Here, Jordan's Monell claim fails.  Jordan's claim against Sheriff Prator relies exclusively on a statement made by the external investigator George Armbruster, without providing any actual evidence of an official policy or custom that was the "moving force" behind the injury.  As reasoned by the Supreme Court,

> [I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality.  The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged.  That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404, 117 S.Ct. 1382, 1388, (1997) (emphasis in original).  Likewise, any failure to train/supervise claim against Sheriff Prator must fail because Jordan has offered no evidence of a causal connection between the alleged failure to train/supervise and his alleged injuries.  Therefore, summary judgment in favor of Sheriff Prator is granted as to Jordan's Section 1983 Monell claims.

## CONCLUSION

Based on the foregoing analysis and due to the state of the current summary judgment record, the Court finds that Cpl. Garrison and Deputy Pye are not entitled to

qualified immunity with respect to any claims stemming from Jordan's arrest or Cpl. Garrison's search and seizure of property located inside Jordan's home.  A factfinder could reasonably conclude based on Jordan's account and the Audio/Video Recording that Cpl. Garrison and Deputy Pye violated Jordan's rights by arresting him without probable cause and/or searching his house and effectuating the seizure of various items.  Conversely, the Court finds that all claims against Sheriff Prator shall be dismissed, as Jordan has failed to meet the required elements of a Section 1983 municipality claim.

Accordingly,

**IT IS ORDERED** that the Motion for Summary Judgment (Record Document 31) filed by Cpl. Garrison and Deputy Pye be and is hereby **GRANTED IN PART AND DENIED IN PART**.  The Motion is **DENIED** as to Cpl. Garrison and Deputy Pye and GRANTED as to Sheriff Prator.

An order consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 13th day of August, 2013.

S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE